Good morning, Your Honors. May it please the Court. Deputy Attorney General Pamela B. Hooley, on behalf of the Warden, who brought this appeal because the State Court decisions in this case were not objectively unreasonable, the standard under AEDPA, for three reasons. First, the Warden maintains Greenholtz was satisfied. The Court's well familiar with that argument. Yes. And we believe Wilson v. Corcoran reinvigorates our claim that Hayward was wrongly decided to suggest that this Court should second-guess application of State law. So let's put that to rest in that we understand the State's arguments made in all of these cases, and, of course, we're a three-judge panel, and you know we're bound by Hayward, so I'll just save you that time. Thank you, Your Honor. Secondarily, assuming the Court does look to whether the sum evidence test was unreasonably applied, the sum evidence test itself is an extremely deferential test under State law. And under AEDPA, the standard of review is that the application of the test must have been objectively unreasonable. And when there is a general standard of review, such as the sum evidence test, that's been characterized as being worthy of dual deference. This Court's review should be doubly deferential to what in the underlying case is a subjective prediction about parole suitability. And in this case, the California courts have made it clear that offense conduct is not enough to constitute sum evidence, as in Ray Lawrence, et cetera. In a case where the governor's decision is based almost entirely, as I read the record, on offense conduct, and even acknowledges that Tasha's rehabilitation has been impressive, why should this Court hold that the governor has met the sum evidence standard? Two reasons, Your Honor. First, California law still does hold that the crime alone is sufficient. That's set forth in Rosenkranz. That's set forth in Dannenberg. That's also set forth in Lawrence. And the district court's decision acknowledges that standard. Secondarily, under AEDPA, the standard for this Court is to look at the State court decision that it's reviewing to see if it was reasonable at the time it was laid down. The court decisions in this case, the superior court decision, occurred at the time of the Rosenkranz decision, which certainly held the crime alone was sufficient. The California case was a case where the underlying inmate's conduct in prison was entirely devoted to rehabilitation. There was evidence showing she had accepted full responsibility, and the court found in that case that the crime alone was not enough, given that record. But in this case, we have a distinction. Here, the superior court gave credence to the governor's conclusion that Mr. Tash was not fully accepting of responsibility because of what the court and the governor both characterized as hedging. That's a distinction with Lawrence. Ginsburg. And what in the record supports that conclusion? There are at least three points, Your Honor. First, in 1997, when explaining his crime to the psychologist, Mr. Tash made sure to point out that the victim had a shotgun, trying to support his self-defense claim. In 2000, when he had another psychological evaluation for the board's consideration, although Tash agreed with the account of the commitment offense generally, he made a point of disputing one fact and again reiterating that he thought the victim had gone for a shotgun, which was the event that precipitated him shooting the victim. Again, going back to minimizing and saying it was the victim's fault for looking for a shotgun, which was never there. Finally, in what's called a LIFER report, which is a report prepared by a correctional counselor for review by the board, when explaining his own version of the crime to the counselor for the hearing at issue in this case, Tash made, again repeated, an unknown individual had been holding what appeared to be a shotgun when he first went to the apartment looking for drugs. He came back moments later to confront his friend. He accused the friend of being high on drugs and acting out of character, and he said he thought the victim bolted for a shotgun, and so as the victim grabbed the gun, he shot at him. That's minimizing again. It seems in this case, the first two items you mentioned are record evidence that we don't necessarily see in the transcript at the parole hearing. And we're, I'm sure, familiar with those cases, such as Moses and others, that talk about there not being sufficient evidence with respect to self-defense and other items if they're not presented or if they're not available at the parole transcript. So the question is, on this LIFER report that you referenced, is that part of his parole board file? Yes, it is, Your Honor. It's expressly prepared for the board's consideration at the hearing, and that would be part of the record that's forwarded to the governor. So that is part of the record that's considered. And that's the most recent statement by him as to his characterization of his role. Exactly, Your Honor. And there was one point in the record where he again reiterated during the hearing itself at record 49, I thought he had grabbed for a gun by the bathroom, and that's why I started shooting at him. And I'll give the Court the record citations for the reports I referenced. The 1997 psychological evaluation was at 108. The 2000 psychological evaluation was at 113. And the so-called LIFER report was at 101 to 102, where he describes his version of the events. In addition to that, let me also go back on another point you made, which is a timing point. In your view, I mean, there has been some shift in California law as we've gone along on these parole issues. So in your view, when this was considered, Rosenkranz would be the controlling law? Yes, Your Honor. The superior court's decision was in 2004 when Rosenkranz was the law. The Supreme Court, California Supreme Court's decision was actually barely three months after it had decided Dannenberg. So looking through to the superior court's decision, the California Supreme Court found that the superior court's decision satisfied Dannenberg, which expressly said that the crime alone was enough. But again, in this case, we have more than the crime. We have current attitude toward the crime, which is relevant under the statute and regulation. And in addition, I'd note that in Pulley v. Harris, one of the What was the attitude toward the crime that you're relying on? Where did he express the attitude? I should rephrase that. It's what the governor characterized as hedging responsibility, Your Honor. It had to do with trying to minimize and point to the victim as being a threat to him when there was, in fact, no evidence that there was ever a shotgun there. That was at the time of the conviction, was it not? It was at the time. Sentencing. Yes, it was then, Your Honor. It was also in 1997 for the psychological evaluation and anticipation of his parole consideration hearings. It was again in 2000 in connection with his mental health evaluation, which is done in anticipation of and for the express purpose of being considered by the board during the hearing. And he again did it, Your Honor, in 2003, which was the hearing at issue in this case, when he again characterized this as a matter of self-defense, when he described his version of the crime to his correctional counselor. If you want to reserve time, you have a minute and a half left. I would gladly do that, Your Honor. Thank you. Good morning. Good morning.  My name is Jean Niehaus from Melvin E. Myers for Petitioner Paul Tash. First, I would like to start in response to the state's argument that this court should not apply Lawrence and should instead defer to Rosencrantz, which is a case from 2004. That is not the precedence of this court. The Ninth Circuit has consistently applied Lawrence to pre-Lawrence parole decisions. In Hayward, this court applied Lawrence to a 2003 governor reversal. In fact, before the en banc decision in Hayward, this court requested briefing on the effect of Lawrence and its companion case and then issued the en banc opinion and applied those cases. In Purdall, this court applied Lawrence to a 2002 board denial. And in Cook, this court applied Lawrence to a 2002 board denial. For these reasons, when this court looks to the governor's reversal and the superior court's affirmance of that reversal, this court should be applying Lawrence, its companion case, as well as Rosencrantz and Dannenberg. Now moving to the issue of whether or not Mr. Tash has taken sufficient responsibility for the crime. The only statements the governor and now the state can point to about Mr. Tash's supposed failure to take responsibility to the crime are Tash's historical descriptions of the crime. His recollection of his mindset that day, 28 years ago. It's important when evaluating Mr. Tash's perception or his memory of that day, 28 years ago, that this court recognize that Mr. Tash was a meth addict. He had used methamphetamines on a daily basis for years leading up to the crime. He has told his psychologist that he was increasingly experiencing paranoia. His mindset that day, his perception as he remembers it, is that he went to his drug dealer's apartment to buy drugs. He was turned away. He became angry and shortly thereafter returned. Within seconds, he forced his way in and the victim began to flee. He believed the victim was fleeing to retrieve a shotgun that Mr. Tash could have sworn was there. And perhaps he was going to flee to find help with a third person in the apartment. And Mr. Tash then shot and killed the victim. Importantly, Mr. Tash knows that his perception on that day was wrong. And he knows that the evidence found by the police at the scene of the crime do not support this recollection. Mr. Tash told the parole board in 2004, quote, I thought he went for a shotgun. To this day, there is never any evidence of one found, and the police stated there wasn't one there, end quote. The board also asked Mr. Tash if he testified at trial that it was self-defense. And Mr. Tash told the board, quote, I was just trying to explain how it all happened. There was a gun in front of the bathroom. I was sure of it, and now I'm not so sure. But Mr. Tash continued and told the board, it really doesn't matter if there was someone there or if he had a gun or not. All of this could have been avoided had I not been there. So whatever happened, or whatever was laid out, or whoever was there inside, it really shouldn't matter because my part is I should have never stepped through the door. The fact that Mr. Tash wrongfully perceived the situation in that apartment 28 years ago does not diminish the fact that today he has taken complete responsibility for the crime and is extremely remorseful. Mr. Tash has taken- Excuse me. Opposing counsel indicated there were, I think, four different situations in which he was now condensing that before the board. Is that not the case? It is the case that in these three or four reports, Mr. Tash has always told a consistent story about what happened that day. And his memory that day was that the victim was fleeing to retrieve a shotgun. But also importantly, in these same three or four reports, these prison counselors and psychologists have found that Mr. Tash took responsibility for the crime. In 2003, that same report, the life report, a counselor found that Mr. Tash understands that he was the sole cause of the crime. In 2000, a psychologist wrote that Mr. Tash told that psychologist, it's all on me. In 1994, a psychologist documented that Mr. Tash has accepted full responsibility for his prior criminal activities. What the governor nor the state today can point to are any affirmative statements by Mr. Tash that he's currently maintaining he acted in self-defense, or that he was justified in shooting the victim, or that he was not remorseful. What about, I'm looking at one of the documents cited by counsel. I think this is one of these LIFER reports, and it's page 113, when they ask if they were viewing the life crime and whether he accepts what was in the central file. And then he said, well, he disputes one fact. He stated the victim did go for a shotgun, which was the event that precipitated him shooting him. What do we make of that statement? That statement is simply Mr. Tash's perception of what happened that day. That same report continues in that same paragraph. Asked for his thoughts and feelings regarding the crime, Mr. Tash, I'm sorry, he stated that if he had not gone back to the apartment, there would not be any problems. Therefore, and it's difficult to read, that's the quote, it's all on me. He acknowledged making bad choices and takes responsibility for this crime. He showed an adequate amount of empathy for the victim. Now if this psychologist thought that Mr. Tash was either lying or not credible or not properly expressing remorse, we have to believe that this psychologist would have documented that. But he didn't. Instead, he documents Mr. Tash's historical description of what happened. It's simply his explanation about his perception that day, 28 years ago. But then notes that Mr. Tash is remorseful. Also, with regard to the court's question about whether or not the 2003 life report is Mr. Tash's most recent statement. And I would correct that it is not his most recent statement. His most recent statements are the statements he made at his 2004 parole hearing, the transcript of which is over 100 pages. Now important- What counsel said, or at least as I heard it, was the most recent statement in which self-defense issue was on the record. Okay, then, I'm sorry, then I'm corrected. Importantly, when the board found Mr. Tash suitable for parole in 2004, the parole commissioner gave two reasons why he found Mr. Tash would be suitable for release. The number one reason he gave was that Mr. Tash has taken full responsibility for the crime. Now, the governor is permitted to weigh evidence differently than the board, as well as differently than the district court. But the governor may not do so irrationally. The record before the governor and the superior court cannot support the finding that if Mr. Tash was released from prison, that he would pose an unreasonable risk of public safety. The governor based his reversal on only two components, the commitment offense and this purported failure to take responsibility for the crime, which is not supported by the record. Under Lawrence, the circumstances of Mr. Tash's commitment offense are no longer probative of his current threat to public safety. As it's in the record, he's been a model prisoner since the 1980s, and there's no indication that he would be dangerous if released. Now with the time remaining, I would like to move to the issue of what relief this court should grant. If the district court is affirmed, the governor should not be permitted to re-review this parole decision. This relief would not be proper under California law. Both Masoner and McDonald and Lawrence expressly resolved this issue. Re-review by the governor is not proper. It is not proper because the judiciary has already found that in no circumstances can this record support a finding of current dangerousness. Any re-review by the governor here would be useless and futile. And that's exactly what Masoner and McDonald found, which are two recent California Court of Appeal cases. Mr. Tash will effectively have no remedy if the governor is permitted to re-review again. On this same flawed record, the governor can reverse again. Mr. Tash would then have to start this procedure over, and even if he would be granted habeas relief again, nothing would stop the governor from reversing a third, a fourth, or a fifth time. Do you have a case to cite to us? Yes, so Masoner and McDonald are both governor reversals that were vacated. In Masoner in particular, the state solely appealed the remedy, which was to reinstate the board decision and not permit the governor to re-review. And Masoner found that it would be improper to allow the governor to re-review because the court has already found that the record before the governor could never support a finding of current dangerousness. I think there's a recent state court, McDonald, is that it? And that's also McDonald has found the same. McDonald just a month or so ago said that you vacate the governor's order and reinstate the board's order, is that correct? And if you were to reinstate the board's order, Mr. Tash would be released shortly thereafter, because the board set a release date of 14 years, and he's served 28 years. And I see that I'm out of time. Thank you. Thank you. See how quickly I can speak in less than a minute and a half. First, with respect to the remedy, I find myself in the unusual position of arguing that the district court's remedy was not an abuse of discretion and should therefore remain in place here, where the matter was to be remanded with giving the governor the opportunity to review. And that is consistent with Lawrence, which talks about the governor's constitutional and statutory duty to protect public safety. I'd also point out that McDonald and Masoner are appellate court decisions from the second district court of appeal. The third district court of appeal in California in Ross 2, a second Ross decision, although it predates Prather, the principles within it suggest that it's appropriate to send it back to the governor because Masoner and McDonald are based on the flawed presumption that the governor would flout a court order and would not take into consideration what an order found with respect to his decision. If we were to find there seemed to be a conflict, we would have two choices, or maybe we'd have more. One would be to navigate the conflict and see what we think the Supreme Court would do, and the other would be to certify that issue. Do you have any comment on certification? Certification would be interesting. I tried to bring that matter to the court in a case myself and was rebuffed in a petition for review. I know we tried that with a question on the statute of limitations as well. I'm not sure whether the California Supreme Court would entertain that. And that uses up all of my time, though I certainly have other things to say. I'm sure. Thank you. Thank you for both the briefing and the argument. Tash versus Curry is submitted.
judges: Hug, Nelson D. W., McKeown